O'Donnell v. United States Mr. Shahady. Good morning. Good morning. I'm pleased to court. My name is John Shahady. I represent the appellant, Timothy O'Donnell. With me is co-counsel and trial attorney, Mark Chandler. Your honors, the issue on appeal is whether the district court properly granted summary judgment in favor of the government on Mr. O'Donnell's Federal Tort Claims Act. And getting down to the main issue, the district court seemed to consider the fact that Mr. O'Donnell wrapped the pressure hose around his foot as creating an issue that was the accident under either a duty or proximate cause analysis was a freakish result or something that was considerably remote to take it out of the trier fact. Let me ask you a practical question. Yes, sir. Because it's a Federal Tort Claims Act case, this is a bench trial, right? Right. In the event that we were to agree with you that there's a genuine issue of material fact here about proximate cause and we remanded it, we pretty much know how the district court is going to decide that as an issue of fact, don't we? I don't think so. And I've struggled with that and I talked to a co-counsel about that. I said, if we win, what do we win? Because we're going back in front of the same judge. Right. I mean, if the district judge were to find as a factual issue that there was not proximate cause, it would be subject to review for clear error. It'd be very difficult for you to overturn that finding, right? Potentially. I think the Markham case is very helpful for us. I agree with you, but here's where I think it's distinguishable. First, an issue of duty will be found by this court. That there was a duty on behalf of the government. The district court found there was no duty and I think . . . Duty seems to me to be your hardest argument. I was just . . . I mean, I think this is a relatively close case. I was just looking at it just from a practical perspective. Even if we were to agree with you about duty, I'm just not sure what gets accomplished here. Sure. I think if this court reverses and finds that the district court was incorrect and there was a duty, that would address the foreseeability argument that the district court addressed and found that that was so remote that there could be no duty. Secondly, I think there's more evidence that the pictures that we've addressed in the court did not allow. That would be . . . Well, I mean, you have since moved to supplement the record to include those and the court has not ruled on that motion. I want to ask the government about that and my colleagues. Understood. I'm not sure from your perspective what difference the photos make. Well, I think to have a complete trial on the merits, there'd be more information than just the cold record. Again, we can't guarantee that the district court would make a . . . I can only speak for myself. The odd thing was that I was more inclined to think that we should reverse this case until I saw the photos. Then it was the government who moved to exclude them. That's . . . It's just the weirdest thing. That's the way I felt about this case. Maybe it was good they excluded them, but I do understand what you're saying and we have . . . that's a main issue, but I think if it's reversed, judges can always change their minds and I think this could be persuasive, obviously, on the issue of duty and proximate cause because it would be fleshed out more as far as a complete trial on the merits, but I do understand it is obviously an issue for the court. If we think about it in terms of duty, it seems to me that the real risk here was that the driver would damage the hose, not someone who was holding it. I disagree, Judge. I think with the duty issue here, in the McCain case, the Supreme Court case I'm relying on, I'll read from McCain. It's, as to duty, the proper inquiry for the reviewing appellate court is to whether defendant's conduct created a foreseeable zone of risk, not whether the defendant could foresee the specific injury that actually occurred. Yeah, well, I'm not talking about this specific injury, the freakish accident, as the district court said, where it wrapped around his ankle and all of that. I'm just thinking if I'm the driver, I might think that driving over hoses, it could damage the hose, but I don't think of it as potentially injuring someone far away who's holding it. Well, let's talk about far away. In any sense. Talking about probably from me to you, far away. I view that as relatively far away. Thirty feet, okay, but here we have the hose that's connected to the truck, but also connected to the machine that the plaintiff was using. So we have a zone of risk where a truck driver would have to know that if he runs over these pressurized hoses, which a testimony is that they were about a foot off the ground because they're pressurized, that it's not only going to affect the hoses, it's going to affect the person that's at the end of the hose. Well, so the Florida courts have said the mere possibility of an event is not the same as foreseeability. The duty requires a probability that something will occur, not a possibility that it will, and that's why I return to my concern that the real probability here would be is more of a damage to the hose, not the possibility that someone holding it 30 feet away is going to be injured. Well, again, it would be our position, and I understand that our position would be that when it's attached to the person, when the person's actually holding it, that it's much different than just damaging the hose, especially when you're going to be dragging it. Is that the probability, though, or is that just a possibility? It would be probability because there could be numerous things that could happen to someone if the hose is dragged, drug-dragged. I'm not sure what the proper term is. And the Florida Supreme Court said that the, quote, need not be foreseeable. Correct, and that's what we're saying here. But there is a probability. I mean, so that is really going, though, to the type of injury, not the question of whether someone holding the hose will be injured at all. Right, but that's, again, going to the foreseeable zone of risk. They're saying the type of injury is not a relevant analysis here. Is there a foreseeable zone of risk created by running over those hoses that could potentially injure someone on the other end of those hoses? And our position is yes, and our position is strengthened by the Markham case. There's two reasons why I consider our position strengthened by the Markham case on the duty element. In Markham, with the Fifth Circuit, the former Fifth Circuit, determined that there was a duty on behalf of the truck driver because the truck driver saw that there were workers in the area, understood the issue. And even though he didn't see Mr. Markham, when he drove through the intersection, he was aware there were workers present. And the duty element was also explained by the former Fifth Circuit. I think it's very relevant here because what happened factually in Markham is even more tenuous than what you would allege here. What happened in Markham was there was a truck that was being driven and there was a cable behind the truck. Mr. Markham was not holding the cable. Mr. Markham was actually directing traffic. He had nothing to do with the cable. There was another worker there that was holding the cable. The cable was about 12, 18 inches off the ground, just like the pressure hoses here. When the . . . Yeah, the problem with Markham, it seems to me, is that it's a Louisiana law case and this is a Florida law case. I'm just not sure that the laws of the two jurisdictions were the same anyway. Well, I would submit that the placebo zone of risk is the same. But again, the . . . Let's go back to Judge Pryor's first question. Yes, ma'am. And the last comment on the law to make sure I understand. The way I understand Florida law, the question of duty is a question of law. Yes. The question of approximate cause is a question of law. Correct. So one answer to Judge Pryor's first question possibly could be, well, the district court treated approximate cause as a question of law, not as a question of fact. So an opinion could correct that. But then the answer to that would be that the district court looked at all of the facts, and if you don't have any additional facts, isn't this a waste of time? Do you mind about where we are? I'm not sure if there was additional facts that the court could consider, but I do not consider, obviously, a waste of time. I'm not sure how the district court will rule if it's reversed. But I understand what you're saying is a potential issue with that. But I think the district court did mix issues of fact and law. Well, the district court states on page 9 that O'Donnell failed to establish approximate causation as a matter of law, and that would lead one to think that the district court might have thought that approximate cause is a question of law, not a question of fact. So one answer would be, well, we could tell the district court under Florida law it's a question of fact, not law. Then the next question is, what fact didn't the district court have? You were answering that, and I'm not sure I understood your answer. Well, there's only one issue when it's a matter of law, when it's unquestionably remote, and the district court can determine approximate cause when it says unquestionably unforeseeable. So there is a potential here. But your first question is, even if we go back, what do we . . . Again, I would consider the fact that if this court determines there is a duty, then it takes care of the foreseeability issue, which the district court potentially . . . I guess one thing the district court could consider on remand that it hasn't before is those photos. I'm not sure where that's going to lead you to. Again, I understand that. But also, they based both their district court, both the duty and proximate cause on the issue of the foreseeability because of the fact that Mr. O'Donnell put the pressure . . . looped the pressure hose around his foot, and they determined that's not something that could . . . that was so remote, that's not something that could be considered foreseeable. I think I'm over, so I'd like to . . . Okay, Mr. Shahidi, you've saved five minutes for rebuttal. Ms. Reed. Thank you. Good morning. May it please the court, Lisette Reed for the United States of America. I have with me at counsel's table Alicia Welsh, who handled the case in the district court. When we talk about whether we should be looking at these pictures or not, I had granted your motion to strike those because the district court did not consider them, and I thought that was technically a fair objection. But when . . . now we have before us a motion to supplement the record, to include them, and it does seem the sort of thing . . . when you read the depositions, they're obviously referring to some photos. It does seem the sort of thing that ought to be in the record, and I'm not sure that it hurts you. Should we really exclude them or what?  I'd like to talk about the pictures. First of all, as it says in Mr. Hack, the mail carrier's deposition, those pictures were taken after the fact. So when you see the pictures, you're not seeing definitely anything that the mailman saw when he came to the scene. The other thing about the pictures that becomes clear in the deposition is that the hoses were actually moved by the time the pictures were taken because it's the mail carrier's supervisor that takes the pictures. So the hoses are then moved because while they're waiting for the ambulance to come, Mr. Curtin says, I moved the hose so that I could finish the job. So our concern, Your Honor, is that the pictures really lack relevance for purposes of summary judgment, where we're assuming all the facts in the light most favorable to the plaintiff. It is actually more confusing than it is helpful would be our position. So it's a 403 objection? I mean, it's hard for me to see it as irrelevant. I mean, the pictures at least show us the size of the hose. It shows us something about their surroundings, whether they were moved or not. What the truck looked like. I mean, it does seem to me that it has some relevance. It certainly was important for purposes of the deposition to figure out where the people were, what the house looked like, spacing. But all of that comes out in the deposition itself. It may be helpful at the trial level, but for summary judgment, it's definitely more confusing than it is helpful. Okay. But just to be clear, the witnesses did talk about the photographs and the depositions, and they were exhibits to the depositions. Is that correct? I agree. Yes, they were, Your Honor. But technically, they were not made part of the record that the district court considered in the motion. Exactly. And under the Chapman case, in the summary judgment scenario, where we're looking at the facts in the plaintiff's best light at any rate, that the court can't review anything that wasn't before the district court at that time. I agree with Your Honor, Judge Pryor, that proximate cause is absolutely going to be case dispositive here. And Judge Black, in this situation where the district court looked at, in a summary judgment situation, all of the facts as a given, I think what the court means when it says that there was no proximate cause as a matter of law, the court means I've accepted all of the plaintiff's facts. The court states I've accepted all of the plaintiff's facts in looking at those facts in the light most favorable to the plaintiff, and then comparing it to the proximate cause law for the state of Florida, that as a matter of law, there is an approximate cause. My question, underlying my question is, assume you have duty. Just make that assumption. Then you go to proximate cause and it's a question of fact. Correct. And so the question was based, and I think that's how counsel understood the question. The question was based on the fact, assume you have duty. If you don't have duty as a matter of law, we don't get any place. Yes. But assuming you have a duty, then proximate cause is a question of fact. Everyone would agree that that's a sense. Oh, yes. Yes. Yes. And in this case, the district court didn't err in determining that the incident here, while unfortunate, was unpredictable in the light of common human experience. And in this case, under Florida law, we can't impose liability. So we can look at first the threshold issue of legal duty, and the question there is what's the general threat of harm that's posed to others by the negligent act? And with the negligent act is backing up over these pressurized hoses, which were, according to the deposition, about three quarters of an inch in radius. The natural thought. Which would be a lot more apparent if we were looking at the photo. Let me ask you specifically, counsel. So Mr. O'Donnell says it's not just that it was a hose in the road, but it was a hose that was being used by a person, which was obvious from the fact that there was a truck there and there was equipment and there was a guy in the driveway with a hose in his hand. So let's set aside whether just the hose in the road would have created a duty, and please address that point. If I understand your question, Your Honor, the mailman said that he saw the hose on the side of the road. He saw someone working 40 feet away on the driveway. Is that your question? With a hose. He walked right by, so he saw that he was working with some kind of hose. He was actually holding on to some sort of surface cleaner, which has sort of stand-up handles, a broad base. But that surface cleaner, yes, was attached to the hose. He's walking back. At that point, he had already, according to their facts, his front tires had gone over the hoses. At that point, he's walking back to the truck and he's just backing over these hoses. If there was no injury, no movement, no problem going over the hoses, I don't think it's the natural assumption that there would be, in the common human experience, any problem going back over the same hoses that he had just driven over. The district court said that there was no duty, partly because there was no record evidence that the act of running over a pressure-washing hose has ever resulted in the type of harm that O'Donnell experienced. That seems to me like inserting a fact issue into what we've all agreed is a question of law. There was a statement of fact here made by the plaintiff in which Mr. Curtin said, in his experience, in his sixteen years of experience, this had never happened. He had also said, as part of the plaintiff's fact scenario, that you just don't do this. When he was asked about looping a pressurized hose around his ankle . . . The problem with that is it seems to me that the district court did confuse what kind of injury we're talking about when we're talking about the zone of risk from the standpoint of duty versus the particular injury that occurred here, which is more to me, at least, a question of proximate cause. If you look at it from the duty inquiry, the district court seems to have mixed up the proximate cause and duty issue by looking at this particular kind of injury as opposed to running over a hose wouldn't be thought to be creating a risk of harm to . . . a probable risk of harm to people who are working with the hose thirty feet away. The district court started to say it the way I would have thought it would have when it said, while it may have been foreseeable the hose would be damaged if run over by a vehicle. Okay, I get that. The probable injury here is to the hose. It was not foreseeable that running over a hose in the street would catch the bottom of that vehicle, in this case a mail truck, causing it to tighten around O'Donnell's ankle. He's then talking about this particular type of injury as opposed to just a general risk of harm to people who are working with the hose. Okay, I understand your court's concern. The foreseeability issue is a much more specific and narrow analysis. And that goes to proximate cause, right? And didn't the district court mix it up? Right. No, I think the district court was correct. As Your Honor points out, he did start with the supposition that what's the general threat of harm? And the general threat of harm in the common human experience was that the hoses would be damaged. But the court went on to also discuss, because there is a foreseeability factor that needs to be discussed, even when you're talking about a general threat. Here is the factor that we think is completely outside of the thought. What might be the zone of risk to people who are working with the hose, there might be a variety of kinds of injuries they would suffer. Correct. But, you know, someone . . . It could have been more artfully stated. I will agree. But I don't think that there's any misunderstanding as far as the district court's concept of what was the general threat. And he repeatedly said that he thought the general threat would have been the damage to the hose itself. Counsel, let's assume that the driver was on notice that pressure washing was occurring in the driveway, and that the driver and that Florida law says if you operate a motor vehicle, you weather backing, starting, proceeding ahead, whatever you do, and you must exercise reasonable care. Assuming that there was testimony that the driver did not exercise reasonable care. And assuming then that we have a duty to make those assumptions. Where are we? We're at the point where we realize that there is an intervening act, as the court has emphasized, that is completely improbable. The intervening act . . . we're back to the approximate cause analysis. Which is a question of fact. Which is a question of fact. But we are accepting at summary judgment the facts in the light most favorable plaintiff. What you're saying is that given what the facts are in the light most favorable to the plaintiff, that the government would have been entitled to a judgment as a matter of law. Yes, Your Honor. Exactly. If it were a trial. Exactly. Exactly. So there are no genuine issues of material fact because we've accepted them at this particular juncture. True, if we went to court, there may be facts even more favorable. Has aggressive driving set off a chain of events that resulted in the injury? Your position is no, no way. Because of this intervening act that is so unlikely. As Mr. Curtin pointed out, the owner of the pressure washing company himself, this has never happened in his 16 years. And you just don't put your ankle in pressurized hoses. He would never do it. So we have an intervening act that is not only improbable in our common human experience, but also to the experience of someone who has been working with pressure hoses for the past 16 years. So it's even less likely to a reasonable person who is driving in the vicinity. If reasonable people disagreed, then we're at a trial. If reasonable people didn't disagree. I think that that would be true if this were a negligence case in Florida, a state negligence case. But we have a situation where under the Federal Tort Claims Act, the court becomes a trier of fact. So if reasonable people could disagree, we still have the court's judgment in a Federal Tort Claims Act case, which would be the judgment that we would have again even at the end of the trial. And you don't think it's possible if we were to tell the district court there was a duty here that the district court might have a different view on proximate cause? No, those are two separate analyses. I understand they're separate analyses, but they both involved an element of foreseeability, right? Yes, they do. But the element of foreseeability with proximate cause is a lot more specific, as we've discussed. We do look at that point at the narrow scope, the specific facts that occurred. And I don't see how in this particular case that would make a difference. The court was aware of these facts even in his legal duty analysis and even more so in the proximate cause analysis. It's the intervening act that was so improbable that takes this case out of the usual norm. This case is more comparable to a situation where the driver had run into a pole, an electric pole, and in the Broward-Palm Beach medical imaging case, the imaging company who ran some radiological equipment that was affected by the loss of electricity attempted to say that there was some cause involved. It doesn't help us much because the driver didn't know that the imaging center was even there and that it had stuff in it. I mean, in this case, the driver knew what was going on and was right there and could tell what was going on. Clearly, but couldn't tell. I had trouble figuring out why that case helped you. Because, again, there's a situation where the driver could not have told what was the actual situation, connection between the hose on the ground and the man 40 feet away that could have caused such an accident. In South Florida, it's our common experience that pressure hoses are on the ground. Pressure washing is a regular activity. In a parking garage that you may park in, it's not uncommon to see a pressure hose laying on the ground. So for a driver in South Florida, this is part of our normal experience. The driver could have driven even more aggressively, could have just hit the gas and peeled off, and that wouldn't have been a problem because there's no duty. There is a duty because still there is a threat of harm. I mean a threat of harm to a person. Well, there's always a threat of harm to a person if you're peeling off and driving quickly. I don't see that that would have made a difference in the pressure hose scenario as well, is what I would say. But I don't think that reckless driving under any circumstances would be not a breach of legal duty. Okay, Ms. Reed. I think we have your case. Mr. Shahady. Thank you, Your Honor. I would ask that you affirm the district court's ruling. Thank you. I'll address the arguments made by counsel to the extent I'm able. The arguments that counsel made regarding the proximate cause issue, that somehow an intervening cause would be dispositive, was addressed in McCain in the Supreme Court. I'm reading from 504. And when the court found there was a duty, they said, certainly the power company, the defendant, is entitled to give the fact finder all available evidence about intervening causes, precautions taken against the risk, the fact that no similar injury has occurred in the past in comparative negligence, among other matters. Meaning the Supreme Court says you can consider those as fact issues. They're not dispositive, and they're not something that the court should consider as a matter of law. They're fact issues. Similar incidents, intervening causes are nothing that you can consider as a matter of law. So counsel is incorrect saying that an intervening cause would be an issue of law. It's certainly not. Going back, though, because I know there's an issue of duty, I think the plaintiff's position, it's more than just running over the hoses. It's running over the hoses which created a chain of events, including that it is improbable that you run over hoses. These coils were not just on the ground. They were up a foot, foot and a half. It would cause anybody at the end of the hose to be dragged. So there's more than just the hoses being damaged. It's that there's going to be a dragging. It's not just running over the hoses, going backwards. There's testimony that the driver took off in an aggressive manner. So that's the zone of risk that we're addressing, not just running over hoses and damaging hoses. It's creating a chain of events by aggressively running over the hoses, which would, because they were so high, would catch onto the truck, which would cause the hoses to be dragged. And that's our position here. And, again, I'd like to address. Well, I can . . . maybe I just don't understand. But it seems like everybody's getting approximate cause and duty mixed up, the district court and counsel on both sides. I mean, to me, if we're talking about the zone of risk for duty purposes, what we're really talking about is the risk of injury to people who are using a hose. Not the particular type of injury, not that it has to do with backing up over it or whether someone's going to get their ankle hurt or even whether they're going to fall down. There could be any number of injuries to a person who's using the hose. And the question is, when you think about running over the hose, whether backing over it, whatever, is the zone of risk a risk to the person using the home or is it just limited to the damage to the hose itself? And we're getting mixed up with this particular plaintiff's injury, which is more of a question, it seems to me, a question of fact and approximate cause than it is zone of risk and duty. Do you understand where I'm coming from? I understand and it's our position that under McCain there is a broad zone of risk and this encompasses the zone of risk that would include the plaintiff here. And again, I'd like to just address Markham one very quickly. I understand what you're saying about Louisiana law. I think Florida law is also on the same principle that a driver of a vehicle has a lookout duty and make sure that he understands the contingencies around him. But again, in Markham, I think what is important in Markham, as in here, is that, and again, I might be mixing duty and approximate cause and I think that happens a lot with these cases, is that Mr. Markham wasn't even holding a cable. And when the driver went through, it somehow wrapped around him, causing his eventual death. And the government said that that's something that's too remote in the district court. And the appellate court reversed saying, no, it's not remote. It's something that is a potential consequence and you can't separate the two. And finally, to talk about the fact that even if you reverse, the district court has already made its decision. I understand there's deference given to the district court in these Federal Tort Claims Act, but it's not absolute. And I think it would be unfair to say, well, it doesn't make a difference. They've already made their decision. District courts, just like appellate courts, can change their minds at any time. So this is really an issue of was there any, as a matter of law, no duty or no approximate cause. And if there's not, if there's reasonable interpretations that could materially affect, it should go back before the district court judge who can make another decision. But it shouldn't be precluded just because it's a Federal Tort Claims Act case. Thank you, Mr. Shahidi. Thank you. Have a good day. We'll recess until tomorrow.